Miller, Appellant, *v.* Fidelity Mutual Life
Insurance Company.

Argued November 13, 1956.   Before STERN, C. J.,
JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Charles S. Schermer,* for appellant.

*Arthur R. Kane, Jr.,* and *Richardson Blair,* with
them *Joseph P. Flanagan, Jr., Charles I. Thompson,
Harry S. Redeker, Weyl & Kane,* and *Ballard, Spahr,
Andrews & Ingersoll,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, De-
cember 29, 1956:

The controversy in this case does not involve any
legal problem but merely issues of fact.

Plaintiff, Samuel Miller, was employed by defend-
ant, Long Motors, Inc., hereinafter called the Com-

pany, as an automobile salesman and sales manager from January, 1946, to May, 1947, receiving a fixed salary at first of $75 and later of $100 per week. He then gave up his employment for about a year, returning in April, 1948, and continuing until July, 1949, when he finally left for reasons of ill health; during this final year he was on a straight salary basis of $125 per week. Throughout these two periods he was regularly carried on the payroll records of the Company and his salary was subject to the normal deductions for withholding-tax and social security.

Plaintiff claims that sometime in August or September, 1948, the President of the Company orally promised him that, in lieu of paying him an annual cash bonus, the Company would purchase for him an annuity or retirement income policy so that "when and if" he "ever reached the age of 65" (he was then 51 years old) he "would have some money to fall back on," the Company to pay the premiums thereon of approximately $1,900 per year, but instead of carrying out this promise the Company took out a policy which did not designate him as owner and beneficiary but, on the contrary, named the Company itself in those capacities.

The Company presented a different version of the oral conversation. It asserted that its undertaking was a purely voluntary one, that the policy was not intended to be in lieu of any annual bonus, that it was to be taken out in its own name, and that it was understood that if, and only if, plaintiff remained in the Company's employ until the maturity of the policy, September 24, 1962, the Company would then begin to pay over to him the benefits prescribed in the policy of $150 per month during his life, or, in lieu thereof, would obtain for him payment of the maturity value

of the policy or the option of certain other modes of settlement.

The policy in dispute was written by the defendant Fidelity Mutual Life Insurance Company. Plaintiff claims that he objected to it immediately upon seeing that he was not named as owner and beneficiary; the Company denies this and claims that he clearly understood that upon his reaching the retirement age, *if still in the employ of the Company,* the latter would collect and pay over to him the annuity amounts, and that he was wholly satisfied with this arrangement.

In July, 1949, plaintiff, as previously stated, left his employment because he had suffered a heart attack, and, except for a period of approximately three months in 1952 during which time he received regular weekly cash payments from the Company, he did not thereafter work on any salary basis and was not carried on the Company's payroll records. His only connection with the Company between July, 1949, and January, 1954, was that, during the last two years of that period, he sporadically sold for it some ten or eleven automobiles for which he received a cash commission of $25 or $50 per car. Plaintiff himself testified that he did not consider himself an employee of the Company after 1949 except so far as "walking in and selling cars whenever" he "had a customer available."

In September, 1953, the Company, as owner of the policy, surrendered it to the Insurance Company for its cash surrender value of some $7,500, it having paid the annual premiums thereon until that time; it stated that it took this action because plaintiff, not having then been in its regular employ for four years, apparently would never return because of his continued ill health although refusing to adopt the Company's suggestion that he apply for a medical certificate of dis-

ability. A year later plaintiff instituted the present action in equity to have the policy reinstated and reformed so as to make himself instead of the Company the owner and beneficiary, with the right on his part to pay the premiums accrued since the date of its cancellation and thereafter to continue it in force. The court below dismissed the complaint and plaintiff appeals.

The principal issues before the Chancellor were (1) the question in regard to the terms of the oral conversation between plaintiff and the President of the Company concerning plaintiff's continuation in the Company's employ as a condition of his rights under the policy, and (2) the question as to whether he ceased his employment in 1949 or, as claimed by him, in 1954 subsequent to the cancellation of the policy. Unfortunately for plaintiff, the Chancellor, passing upon the credibility of the witnesses, decided the conflicting versions in regard to these two crucial matters in favor of the Company, and his findings, supported as they are by the evidence and affirmed by the court en banc, must be accepted by this court as conclusive. Indeed they are strengthened by a realistic view of the situation that existed between the parties, it being wholly unlikely that the Company would have agreed to pay an annual premium on the policy of $1,900 for a period of 14 years, amounting in all to some $26,000, and deriving no benefit of its own therefrom, if plaintiff were to have the right to leave his employment at any time during that period, even, perhaps, a day after the Company's promise was made to take out the policy for his benefit. As a matter of fact, according to the court's finding, he did leave only nine months after the policy was issued, for his casual selling on commission of a few automobiles between the years 1949 and 1954 was

not the type of employment which had theretofore existed and which could have been contemplated by the parties in connection with their oral understanding; even if, according to plaintiff, the premium was to take the place of an annual bonus which he might otherwise have received he certainly would not have been entitled to any such bonus during the five years in question.

As to plaintiff's assertion that he became aware of the terms of the policy only in 1953, the Company points out that the application for it had expressly named the Company as beneficiary and plaintiff had added his signature thereto both to indicate his consent to the insurance and to affirm that all the statements therein were true; his attempted excuse that he did not read the application before signing and that it contained some blanks does not present, of course, a legal defense, especially as he certified therein that he *had* read it carefully. Moreover, the Company also points out that the policy itself was at all times available to plaintiff for inspection, being kept in the drawer of a desk which was used by him in the Company's office. And finally, while plaintiff makes much of the fact that an agent of the Insurance Company wrote to him two letters in 1948 purporting to set forth the terms of the policy which Long Motors "had purchased on" his "behalf," and outlining the various rights and options plaintiff would have thereunder, there was nothing inconsistent therein with the contention of the Company that plaintiff would receive all such benefits *if* he remained in its employ until the maturity of the policy. This was a condition which was of no concern whatever to the Insurance Company, and one of which the agent who wrote the letters had no knowledge, as he himself testified.

The decree is affirmed at appellant's costs.